**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | *        Case No. 21-cr-171-PWG |
| DEVONTA TAWAIN JOHNSON | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM AND ORDER**

Defendant, Devonta Tawain Johnson, filed two motions to suppress evidence and statements obtained during a warrantless search and seizure and his arrest on January 13, 2021. Mots., ECF Nos. 20, 21.[1] A hearing was held on Monday, December 7, 2021, during which I ruled on the record in open court. For the reasons stated on the record and incorporated herein by reference, Defendants' motions are DENIED WITHOUT PREJUDICE. This memorandum briefly summarizes and amplifies my rulings.

**I.    The Initial Stop of Mr. Johnson's Automobile**

After hearing the testimony of Corporal ("CPL") Bankhead and CPL Coles, both of whom I found to be credible, I reached the following findings of facts and legal conclusions. First, CPL Banks initiated the stop of Mr. Johnson's automobile because of the extreme darkness of the tinting on its windows, which he reasonably suspected was darker than that allowed by Md. Transp. Code § 22-406(i). Prior to approaching the Defendant's automobile, CPL Bankhead had radioed his teammate, CPL Coles, and requested that CPL Coles check the registration of the Defendant's Volkswagen Jetta, which was displaying a temporary Virginia license plate. CPL Bankhead did not learn the results of CPL Coles' inquiry until sometime after the Defendant was placed under

---

[1]    The Government responded, ECF No. 27, and Defendant replied, ECF No. 32. The Government also filed a Surreply, ECF No. 25-1, and Defendant filed a Supplemental Brief, ECF No. 37-1.

arrest. For that reason, at the time he initiated the stop and began his encounter with the Defendant, CPL Bankhead's actions were authorized by *Baez v. State*, 192 .3D 945, 951 (Md. Ct. Spec. App. 2018), which held, relevantly" [a] police officer, suspecting a tint window violation, may lawfully stop a vehicle to investigate further and ask to see the vehicle registration to determine origin of registration.  That the vehicle may be registered in a foreign jurisdiction does not vitiate the lawfulness of the stop." The *Baez* decision is binding authority in Maryland.  *Archers Glen Partners, Inc. v. Garner*, 933 A.2d 405, 424 (Md. Ct. Spec. App. 2007).

The legality of a traffic stop initiated by a state law enforcement officer is determined by state law, unless the state law is violative of the federal constitution. *Kerr v. California*, 374 U.S. 23, 37 (1963), *Michigan v. De Fillippo,* 443 U.S. 31, 36 (1979).  The Defendant contends that the *Baez* decision articulates a legal position that explicitly was rejected by the Fourth Circuit in *United States v. Johnson*, 256 F. 3d 214 (2001).  I disagree. In *Johnson,* the issue of whether the South Carolina officer could have conducted a *Terry* stop of the automobile bearing Georgia plates to verify whether that automobile actually was registered in Georgia (as opposed to an automobile registered in South Carolina but bearing a stolen Georgia license plate) was not addressed.  Rather, the *Johnson* decision focused on whether the officer had a reasonable suspicion that the automobile was required to be registered *in South Carolina*, which depended on whether the driver was domiciled in South Carolina or had operated the vehicle for more than one hundred fifty days— facts that could not be determined just by observing the vehicle driving on a South Carolina highway. 256 F.3d at 216-17. As the Fourth Circuit put it "[t]he mere display of a license plate from another state is not relevant at all as to whether Johnson had established a domicile in South Carolina or had been operating the vehicle in South Carolina for an accumulated period of greater than 150 days." *Id*. at 217. But the display of a temporary out-of-state license on a vehicle is

relevant to whether that vehicle in fact is validly licensed in the out-of-state jurisdiction, as the Court of Special Appeals discussed in *Baez*. *See* 192 A.3d at 950-51. And that fact, combined with the extreme darkness of the window tinting, the location of the automobile near the border of Prince George's County and Washington D.C., in a high-crime area that was being patrolled by the Special Assignment Team was sufficient to justify a *Terry* stop for the limited purpose of verifying whether Mr. Johnson's vehicle was validly registered in Virginia.

Alternatively, even if I were to find that *Baez* authorized a stop that *Johnson* prohibits, I am inclined to hold that CPL Bankhead acted in objectively reasonable reliance on binding Maryland judicial precedent, and that application of the exclusionary rule "to suppress evidence obtained as a result of nonculpable, innocent police conduct" would not be warranted. *Davis v. United States*, 564 U.S. 229, 239-41 (2011). Accordingly, subject to considering the limited further briefing that I am allowing on the applicability of the good faith exception and the reasonable mistake of law exception, I conclude that the stop initiated by CPL Bankhead was a legitimate *Terry* stop.

## II. The Search of Mr. Johnson and his Automobile

Based on the credible testimony of CPLs Bankhead and Cole, I find that as CPL Bankhead approached Mr. Johnson's automobile and knocked on the driver's window, Mr. Johnson opened the door, at which time CPL Bankhead smelled a strong odor of marijuana coming from inside the car. This was fully corroborated by the testimony of CPL Coles, who stated that as he approached the Defendant's automobile, he detected a strong odor of marijuana, as well as the photographs of the interior of the Defendant's vehicle, which showed a substantial amount of loose marijuana on the driver's and front passenger seat, and a baggie of marijuana on the front passenger's seat. The smell of marijuana coming from an automobile established probable cause to search the

automobile and all of its contents under both Maryland and Fourth Circuit caselaw. *See, e.g.*, *Robinson v. State*, 152 A.3d 661, 665 (Md. 2017) (holding that a law enforcement officer has probable cause to search a vehicle based on detecting the odor of marijuana because any amount remains contraband); *United States v. Palmer*, 820 F.3d 640, 650 (4th Cir. 2016) (stating that as soon as the officer smelled marijuana, he had probable cause to believe the vehicle contained contraband and was therefore entitled to search it).  That search revealed the presence of the "ghost gun" with an extended magazine located on the floorboard near the back of the driver's seat. This search established probable cause to arrest Mr. Johnson, and to search him incident to that arrest. Therefore, the baggie containing approximately 30 grams of marijuana recovered during the search of Mr. Johnson's person also is admissible. This is so even though CPL Bankhead placed Mr. Johnson in handcuffs and searched the pockets of his jacket (where the marijuana was found) *before* the search of the automobile revealed the ghost gun and additional marijuana. *See United States v. Miller*, 925 F.2d 695, 698-99 (4th Cir. 1991) (stating that where a formal arrest quickly follows a challenged search, it is not important that the search preceded the arrest as long as the arrest was independently lawful).  This is because CPL Bankhead testified that had he conducted a limited pat-down of the exterior of Mr. Johnson when he stepped out of the car (instead of handcuffing him and searching the interior of his jacket pockets) and not found any marijuana in excess of 10 grams (the threshold differentiating criminal versus non-criminal possession in Maryland), he still would have searched the interior of the automobile and its contents, based on the strong smell of marijuana detected as Mr. Johnson exited from the car. Thus, CPL Bankhead's testimony established by a preponderance of evidence *both* elements of the inevitable discovery doctrine: first, that the officers legally *could have* uncovered the marijuana and ghost gun from inside the automobile (based on probable cause to search the vehicle due to the strong smell of

marijuana), and second, that he *would* have searched the car even if his search of the person of Mr. Johnson had not revealed the 30 gram baggie of marijuana. *United States. v. Alston*, 941 F.3d 132, 138 (4th Cir. 2019). Because the search of the automobile provided probable cause to arrest Mr. Johnson, his lawful search incident to that arrest and ultimate discovery of the 30-gram baggie of marijuana on his person was inevitable, and the evidence recovered from his person also is admissible.

### III.     Mr. Johnson's Statements to CPL Bankhead

Although time did not permit counsel to argue regarding the admissibility of Mr. Johnson's statements to CPL Bankhead (while standing outside the car, during the drive back to the police district, and within the interrogation room), that issue was extensively briefed by counsel in their excellent memoranda, and testimony and video evidence was introduced during the hearing that allow me to rule on the admissibility of his statements. First, as the video evidence amply demonstrates, I find that none of the statements he made were the product of impermissible coercion by law enforcement, and therefore they were voluntary. *See Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) (distinguishing voluntary statements from "the functional equivalent" of custodial interrogation).

#### A.     Mr. Johnson's statement to CPL Bankhead that he had "like 10 grams of weed" at the very beginning of the encounter

Police are not required to give suspects *Miranda*[2] warnings during a *Terry* traffic stop. *United States v. Leshuk*, 65 F.3d 1105, 1108 (4th Cir. 1995) (citing *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984)). And, placing Mr. Johnson in handcuffs at the very start of the encounter—after CPL Bankhead smelled the strong odor of marijuana, detected that Mr. Johnson appeared very

---

[2]     *Miranda v. Arizona*, 384 U.S. 436 (1966).

nervous, and Mr. Johnson had disobeyed instructions not to get out of the automobile, leading CPL Bankhead to conclude that he might attempt to flee—did not convert the investigatory stop to a custodial arrest. *Id.* at 1110; *United States v. Elston*, 479 F.3d 314, 320 (4th Cir. 2007).  Thus, CPL Bankhead was not required to give Mr. Johnson *Miranda* warnings prior to the time that he stated that he had "like 10 grams of weed," and that statement is admissible.

### B. Mr. Johnson's statements to CPL Bankhead while being transported to the police station

As the testimony at the hearing and the video evidence demonstrated, Mr. Johnson's statements to CPL Bankhead while being transported to the police station were volunteered, and not the product of police interrogation. Therefore, because they also were voluntary, they are admissible. *See Innis*, 446 U.S. at 300 ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility [is not implicated by *Miranda*].").

### C. Mr. Johnson's statements while interrogated at the police station

The testimony and video establish that after he was given his *Miranda* warnings and acknowledged that he understood them, Mr. Johnson made various statements that the Government intends to introduce in evidence. Because the statements were voluntary, and followed proper administration of *Miranda* warnings, they are admissible. *United States v. Cristobal*, 293 F.3d 134, 139 (4th Cir. 2002); *United States v. Smith*, 608 F.2d 1011, 1012 (4th Cir. 1979). The fact that at some point during this custodial interrogation, Mr. Johnson mumbled the name of an attorney that CPL Bankhead recognized as a criminal defense attorney does not change this outcome, as the video and testimony of CPL Bankhead make it clear that at no time did Mr. Johnson ever unequivocally state that he had invoked his right to counsel.  *See Davis v. United States*, 512 U.S. 452, 459 (1994) ("[T]he suspect must unambiguously request counsel.").   Therefore, CPL

Bankhead was not required to halt the interrogation, and the statements made by Mr. Johnson after that point of time are admissible.

## ORDER

For the foregoing reasons, and for the reasons stated on the record on December 7, 2021, which are incorporated herein, it is hereby ORDERED that:

1. Motion to Suppress (Warrantless Search and Seizure), ECF No. 20, is DENIED WITHOUT PREJUDICE;

2. Motion to Suppress Statements, ECF No. 21, is DENIED WITHOUT PREJUDICE;

3. The parties shall provide simultaneous additional briefing on December 21, 2021, limited as follows:

    a. The briefing is limited to two issues:

        i. Good faith (objectively reasonable reliance on binding appellate authority); and

        ii. Objectively reasonable mistake of law;

    b. Briefs shall be no more than 15 pages double-spaced;

4. No further preliminary motions challenging the admissibility of the statements or the items seized may be filed without advance permission from the Court, which may be requested by letter (not to exceed three pages, single-spaced) containing a brief description of the planned motion and a concise summary of the factual and legal support for it.

Dated: December 13, 2021.

/S/
Paul W. Grimm
United States District Judge